## Gasior *v.* Pittsburgh, Appellant.

Argued November 14, 1958. Before RHODES, P. J., HIRT, GUNTHER, and WATKINS, JJ. (WRIGHT, WOODSIDE, and ERVIN, JJ., absent).

*George Shorall*, Assistant City Solicitor, with him *J. Frank McKenna, Jr.*, City Solicitor, for appellant.

*Sanford M. Lampl*, with him *Samuel Krimsly*, for appellee.

OPINION BY WATKINS, J., December 9, 1958:

In this workmen's compensation case, the wife appellee alleged that her husband's death resulted from injuries sustained in a fall while in the course of his employment as a fireman for the City of Pittsburgh.

The referee found as a fact that the decedent while in the employ of the city on May 22, 1952 met with an accident, injuring his back, while pushing a fire pumper, which accident resulted in his death on November 13, 1952. The Workmen's Compensation Board in reviewing the record concluded that the referee's findings were based on adequate, competent evidence. The County Court of Allegheny County, on appeal, affirmed the board and entered judgment for the appellee widow: "Since the findings of fact by the compensation authorities are supported by substantial, competent evidence which must be reviewed in a light most favorable to the claimants, who are to be given the benefit of inferences reasonably deducible from the evidence, we cannot reverse. Lambing v. Consolidation Coal Co., 161 Pa. Superior Ct. 346, 348, 54 A. 2d 291." The city appealed to this Court.

The facts established by the evidence, and the appellant called only a medical witness, are as follows: The wife appellee testified to her husband's good health prior to the date of the alleged accident on May

22, 1952; that he was active and showed no sign of illness and worked every day; that he complained about having hurt himself on May 22, 1952 pushing the pumper and having pain in his back and hip; that since the accident he was unable to work regularly and was admitted to the hospital July 14, 1952, where he stayed until August 15, 1952; and that he was readmitted to the hospital on September 12, 1952 where he remained until his death, November 15, 1952.

Paul O'Donnell, a fireman who was working with the decedent on the day of the alleged accident testified that an alarm came in and the pumper would not start; that it was being pushed out of the station unto the street with a slight downgrade in order to start it; that he and the decedent were pushing it from the rear and that the decedent "stumbled or slipped and caught himself on the pumper and went down"; that he cried out as he fell; and that he slipped or fell on the cobblestones or the track.

It is clear from this testimony that there is sufficient, competent evidence to support the finding of the compensation authorities that the decedent suffered an accident on May 22, 1952. *Allen v. Patterson-Emerson-Comstock*, 180 Pa. Superior Ct. 286, 119 A. 2d 832 (1956).

The burden is on the appellee to establish the causal connection between the accident and the death. There was ample testimony as to his prior good health and his regularity of employment before the accident.

There was also ample evidence of his lack of good health, his constant complaining of pain, his loss of employment and hospitalization subsequent to the accident until his death.

Dr. Israel Felman, a specialist in internal medicine testified for the appellee, that from his examination of the hospital records, the history and the testi-

mony in the case, the decedent died as a result of a possible Hodgkin's disease or a similar lympho sarcoma. He gave as his definite opinion that there was a causal connection between the accident and the death. He testified that, prior to the accident, the decedent had an inert or quiescent type of Hodgkin's disease and that the trauma caused by the accident activated the condition that resulted in death.

Dr. W. J. Brennan, the only witness called by the appellant, had examined the decedent on August 5, 1952, and testified that the cause of death was Hodgkin's disease and that in his opinion there was no connection between the accident and the death. However, on cross-examination, he was asked, "Q. Is it possible, Doctor, that the accident of May 22, 1952 aggravated a pre-existing condition which was quiescent causing it to become suddenly active and hastening the death of the decedent? A. I would have to admit that such a thing could be possible."

The credibility of expert witnesses and the weight to be attached to their testimony are matters exclusively for the board and in a conflict of medical opinion, it is for the board to decide which conclusion it will adopt. *Visnic v. Westmoreland Coal Co.*, 155 Pa. Superior Ct. 199, 38 A. 2d 539 (1944); *McCleary v. Pa. Electric Co.*, 184 Pa. Superior Ct. 185, 132 A. 2d 389 (1957); *Cunningham v. Guerrina*, 188 Pa. Superior Ct. 288, 146 A. 2d 318.

We agree with President Judge LENCHER, where he says in his opinion:

"Whether we would have found so or not is not material. True, causation had to be shown by positive expert opinion evidence of such quality and quantity as to amount to more than mere probability. Coder v. Pgh. et al., 16 A. 2d 662, 142 Pa. Superior Ct. 407. And Dr. Felman's testimony and conclusion amount

to an assertion of professional opinion which clearly meets the required standard of proof. Elonis v. Lytle et al., 3 A. 2d 995, 134 Pa. Superior Ct. 264. The workmen's compensation authorities might have adopted the conclusion of defendant's medical expert and refused compensation, but they did not. They adopted claimant's testimony and the opinion of her medical expert. The credibility of the expert witnesses and the weight to be attached to their testimony are matters exclusively for the board, and in conflict of opinions in medical evidence, it was for the board to decide which conclusion should be adopted. The severity of the immediate trauma is not conclusive; it is the gravity of the result which we consider inter alia. The existence of the ailment which rendered the infirm worker more susceptible to the injury than an ordinary person would be, will not defeat the right to compensation when the death is actually caused by an injury accidentally suffered during the course of employment. The doctrine applies in malignancies where it is found after the accidental injury that a tumor did exist and was activated, brought into metastasis, and spread, causing death. Bartlinski v. Northumberland et al., 177 A. 518, 117 Pa. Superior Ct. 437. There the working man suffered an accident while re-tracking a mine car, causing existing abdominal tumor to be aggravated, resulting in death, even though the working man was in apparent good health at the moment of his accidental injury, August 20, 1932. Death came January 11, 1933. Where, as here, the findings are supported by substantial and legally competent proof, they and the inferences to be drawn therefrom are as conclusive upon us as would be the verdict of a jury. Frick v. Pgh. School District, 74 A. 2d 659, 167 Pa. Superior Ct. 431."

Judgment affirmed.